BERGER LAW GROUP P.C.
By:     PHILLIP D. BERGER, ESQUIRE
919 Conestoga Road, Building 3, Suite 114
Rosemont, PA  19010
(610) 668-0800
N.J. Attorney Id. No. 019551990
*ATTORNEYS FOR PLAINTIFF*

**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF NEW JERSEY**

------------------------------------------------------------

SURGICAL CAPITAL MANAGEMENT
SPV II, LLC,
                                    Plaintiff,

         v.

MCBRIDE SURGICAL CENTER, LLC
                                    Defendant.

------------------------------------------------------------

CIVIL ACTION NO. 2:21-cv-20501

**ANSWER TO DEFENDANT'S AFFIRMATIVE DEFENSES AND COUNTERCLAIMS**

Plaintiff Surgical Capital Management SPV II, LLC ("SCM"), by and through its undersigned counsel, hereby files the following Answer to Defendant McBride Surgical Center, LLC's ("McBride") Affirmative Defenses and Counterclaims, and in support thereof alleges the following:

**ANSWER TO DEFENDANT'S AFFIRMATIVE DEFENSES**

1.      Denied as a conclusion of law for which no response is required.

2.      Denied as a conclusion of law for which no response is required.

3.      Denied as a conclusion of law for which no response is required.

4.      Denied as a conclusion of law for which no response is required.

5.      Denied as a conclusion of law for which no response is required.

6.      Denied as a conclusion of law for which no response is required.

7.      Denied as a conclusion of law for which no response is required.

8.      Denied as a conclusion of law for which no response is required.

9.      Denied as a conclusion of law for which no response is required.

10.     Denied as a conclusion of law for which no response is required.

11.     Denied as a conclusion of law for which no response is required.

12.     Denied as a conclusion of law for which no response is required.

13.     Denied as a conclusion of law for which no response is required.

14.     Denied as a conclusion of law for which no response is required.

15.     Denied as a conclusion of law for which no response is required.

16.     Denied as a conclusion of law for which no response is required.

17.     Denied as a conclusion of law for which no response is required.

18.     Denied as a conclusion of law for which no response is required.

19.     Denied as a conclusion of law for which no response is required.

WHEREFORE, the Plaintiff, SURGICAL CAPITAL MANAGEMENT SPV II, LLC, respectfully requests that this Honorable Court dismiss Defendant's Affirmative Defenses in their entirety, and grant judgment in favor of the Plaintiff and against Defendant, MCBRIDE SURGICAL CENTER, LLC, in the amount of $11,963,361.00, plus, interest, costs, and attorney's fees as provided for in the Agreement or in any other applicable contract, statute, or rule, together with any such other and further relief this Court deems just and proper.


## COUNTERCLAIMS

### Nature of Action

1.      Denied as a conclusion of law for which no response is required.  By way of further answer, none of Defendant's counterclaims have any merit and should be denied in their entirety as a matter of law.

## Parties

2.      Admitted.

3.      Denied.  After reasonable investigation, Plaintiff SCM is not aware of the exact operations of Defendant's business and same is therefore denied.

4.      Denied.  After reasonable investigation, Plaintiff SCM is not aware of the exact operations of Defendant's business and same is therefore denied.

5.      Denied.  After reasonable investigation, Plaintiff SCM is not aware of the exact operations of Defendant's business and same is therefore denied.

6.      Admitted.

7.      Admitted.

## Jurisdiction and Venue

8.      Admitted.

9.      Admitted that venue is proper.

## The Agreement

10.     Admitted.

11.     Admitted.

12.     Denied as stated.  By way of further answer, Plaintiff SCM and Defendant McBride entered into the Master Agreement to Assign Medical Receivables (the "Agreement") on May 6, 2021. By way of further answer, Plaintiff SCM purchased hundreds of accounts receivable worth a total billed value of $7,731,643.05 for the "Medical Accounts Receivable." Further, Plaintiff SCM purchased hundreds of other accounts receivable, which Plaintiff has determined the total value to be $52,958,806.53 (the "Other Accounts Receivable"), as defined in Paragraph 5 of the Agreement.

13.    Denied. By way of further answer, while Plaintiff SCM was able to conduct some limited due diligence, Plaintiff SCM could not verify all amounts collected previously by the Defendant with regard to the various assigned accounts, nor could Plaintiff SCM verify that the assigned accounts were as promised by Defendant.  By way of further answer, Plaintiff SCM simply had no way to complete full due diligence prior to the closing of the transaction.  By way of further answer, since the transaction closed, Plaintiff SCM has discovered that Defendant McBride included non-qualifying accounts by falsely mislabeling them, included incorrect payment histories thereby reporting inaccurate remaining balances, retained payments that are owed to Plaintiff SCM under the terms of the Agreement, and failed to cooperate with Plaintiff SCM to provide Plaintiff SCM with access to the necessary information required to service the assigned accounts.

14.    Denied.  By way of further answer, see Plaintiff's answer to paragraph 13 above. By way of further answer, Defendant McBride's falsely mislabeled accounts and incorrect payment histories limited the efficacy of any due diligence conducted.

15.    Denied.  By way of further answer, Plaintiff SCM and Defendant McBride entered into the Master Agreement to Assign Medical Receivables (the "Agreement") on May 6, 2021. By way of further answer, Plaintiff SCM purchased hundreds of accounts receivable worth a total billed value of $7,731,643.05 for the "Medical Accounts Receivable." Further, Plaintiff SCM purchased hundreds of other accounts receivable, which Plaintiff has determined the total value to be $52,958,806.53 (the "Other Accounts Receivable"), as defined in Paragraph 5 of the Agreement.

16.    Denied.  By way of further answer, see Plaintiff's answer to paragraph 15 above.

17.    Admitted only that the Agreement was executed by SCM and MSC.

18.     Denied.  By way of further answer, the Agreement is a written document which speaks for itself and any characterization thereof is strictly denied.

19.     Denied.  By way of further answer, the Agreement is a written document which speaks for itself and any characterization thereof is strictly denied.

20.     Denied.  By way of further answer, the Agreement is a written document which speaks for itself and any characterization thereof is strictly denied. By way of further answer, see Plaintiff's answer to paragraph 15 above.

21.     Denied.  By way of further answer, the Agreement is a written document which speaks for itself and any characterization thereof is strictly denied. By way of further answer, see Plaintiff's answer to paragraph 15 above.

22.     Denied.  By way of further answer, the Agreement is a written document which speaks for itself and any characterization thereof is strictly denied.

23.     Denied.  By way of further answer, the Agreement is a written document which speaks for itself and any characterization thereof is strictly denied.

24.     Denied.  By way of further answer, the Agreement is a written document which speaks for itself and any characterization thereof is strictly denied.

25.     Denied.  By way of further answer, the Agreement is a written document which speaks for itself and any characterization thereof is strictly denied.  By way of further answer, while Plaintiff SCM was able to conduct some limited due diligence, Plaintiff SCM could not verify all amounts collected previously by the Defendant with regard to the various assigned accounts, nor could Plaintiff SCM verify that the assigned accounts were as promised by Defendant.  By way of further answer, Plaintiff SCM simply had no way to complete full due diligence prior to the closing of the transaction.  By way of further answer, since the transaction

closed, Plaintiff SCM has discovered that Defendant McBride included non-qualifying accounts by falsely mislabeling them, included incorrect payment histories thereby reporting inaccurate remaining balances, retained payments that are owed to Plaintiff SCM under the terms of the Agreement, and failed to cooperate with Plaintiff SCM to provide Plaintiff SCM with access to the necessary information required to service the assigned accounts.

26.    Denied.  By way of further answer, the Agreement is a written document which speaks for itself and any characterization thereof is strictly denied.

27.    Denied.  By way of further answer, this paragraph does not appear to make sense as it was not SCM who "included additional accounts receivables".

## Post-Execution Due Diligence By SCM

28.    Denied.  By way of further answer, the Agreement is a written document which speaks for itself and any characterization thereof is strictly denied.

29.    Admitted.

30.    Denied.  By way of further answer, Plaintiff SCM and Defendant McBride entered into the Master Agreement to Assign Medical Receivables (the "Agreement") on May 6, 2021. By way of further answer, Plaintiff SCM purchased hundreds of accounts receivable worth a total billed value of $7,731,643.05 for the "Medical Accounts Receivable." Further, Plaintiff SCM purchased hundreds of other accounts receivable, which Plaintiff has determined the total value to be $52,958,806.53 (the "Other Accounts Receivable"), as defined in Paragraph 5 of the Agreement.

31.    Denied.  By way of further answer, see Plaintiff's answer to paragraph 30 above.

32.    Denied.  By way of further answer, see Plaintiff's answer to paragraph 30 above.

33.    Denied.  By way of further answer, see Plaintiff's answer to paragraph 30 above.

34.     Denied.  By way of further answer, see Plaintiff's answer to paragraph 30 above.

## Alleged Breaches By SCM

35.     Denied.  By way of further answer, Plaintiff SCM has not intentionally collected any sums pursuant to the Master Agreement that it was not entitled to collect.  By way of further answer, SCM recently conducted an audit of accounts.  From that audit, SCM discovered that it received some erroneous and "blended" payments for  a very limited number of certain accounts that include amounts due to SCM and in other cases some "blended" amounts for certain accounts that included both payment for a SCM purchased account and also for Defendant McBride.  These customers appear to have paid amounts due with one check to SCM, rather than splitting the payments due to SCM and to McBride, respectively.  Accordingly, out of an abundance of caution, SCM has forwarded to McBride its share of the payments recently received, which amounts total $6,262.11.  By way of further answer, in July, 2021 and again in October, 2021, SCM forwarded additional checks totaling $36,883.74 to Defendant McBride from the erroneous and/or "blended" payments previously received by SCM.  By way of further answer, as evidenced by SCM's actions in forwarding all checks received which potentially could be due to McBride, SCM has always acted in good faith and pursuant to the terms of the Agreement.

36.     Denied.  By way of further answer, Plaintiff SCM has not intentionally collected any sums pursuant to the Master Agreement that it was not entitled to collect.  By way of further answer, it its expressly denied that SCM has acted improperly in any way in this matter.  By way of further answer, see Plaintiff's answer to paragraph 35 above.

**SCM'S Lawsuit**

37.     Denied.  Plaintiff's Amended Complaint is a written document which speaks for itself and any characterization thereof is strictly denied.

38.     Denied.  Plaintiff's Amended Complaint is a written document which speaks for itself and any characterization thereof is strictly denied.

**COUNT I**
**Declaratory Judgment**

39.     This is an incorporation paragraph for which no response is required.

40.     Denied.  By way of further answer, the Agreement is a written document which speaks for itself and any characterization thereof is strictly denied.

41.     Denied.  By way of further answer, the Agreement is a written document which speaks for itself and any characterization thereof is strictly denied.

42.     Admitted only that there appears to be a dispute between the parties as to the meaning and effect of the Agreement.

43.     Denied as a conclusion of law for which no response is required.  By way of further answer, it is Plaintiff SCM's position, which position is supported by the Agreement, that Plaintiff SCM purchased hundreds of accounts receivable worth a total billed value of $7,731,643.05 for the "Medical Accounts Receivable." Further, Plaintiff SCM also purchased hundreds of other accounts receivable, which Plaintiff has determined the total value to be $52,958,806.53 (the "Other Accounts Receivable"), as defined in Paragraph 5 of the Agreement.

44.     Denied as a conclusion of law for which no response is required.  By way of further answer, it is Plaintiff SCM's position, which position is supported by the Agreement, that Plaintiff SCM purchased hundreds of accounts receivable worth a total billed value of $7,731,643.05 for the "Medical Accounts Receivable." Further, Plaintiff SCM also purchased hundreds of other

accounts receivable, which Plaintiff has determined the total value to be $52,958,806.53 (the "Other Accounts Receivable"), as defined in Paragraph 5 of the Agreement.

45.     Denied as a conclusion of law for which no response is required.  By way of further answer, it is Plaintiff SCM's position, which position is supported by the Agreement, that Plaintiff SCM purchased hundreds of accounts receivable worth a total billed value of $7,731,643.05 for the "Medical Accounts Receivable." Further, Plaintiff SCM also purchased hundreds of other accounts receivable, which Plaintiff has determined the total value to be $52,958,806.53 (the "Other Accounts Receivable"), as defined in Paragraph 5 of the Agreement.  By way of further answer, no additional consideration was required to be paid to Defendant by Plaintiff, as Plaintiff paid all consideration required for the assignment of the Medical Accounts Receivable and the Other Accounts Receivable.

46.     Admitted.

47.     Denied as a conclusion of law for which no response is required.  By way of further answer, it is Plaintiff SCM's position, which position is supported by the Agreement, that Plaintiff SCM purchased hundreds of accounts receivable worth a total billed value of $7,731,643.05 for the "Medical Accounts Receivable." Further, Plaintiff SCM also purchased hundreds of other accounts receivable, which Plaintiff has determined the total value to be $52,958,806.53 (the "Other Accounts Receivable"), as defined in Paragraph 5 of the Agreement.  By way of further answer, Plaintiff SCM respectfully requests that the Court enter a declaratory judgment declaring that Plaintiff SCM properly purchased the Medical Accounts Receivable and the Other Accounts Receivable, and thereby Plaintiff SCM has the full right and authority to pursue all of the Medical Accounts Receivable and the Other Accounts Receivable.

WHEREFORE, Plaintiff Surgical Capital Management SPV II, LLC, respectfully requests a declaratory judgment against Defendant McBride Surgical Center, LLC declaring that Plaintiff properly purchased the Medical Accounts Receivable and the Other Accounts Receivable, and thereby Plaintiff SCM has the right to pursue and collect all of the Medical Accounts Receivable and all of the Other Accounts Receivable, together with all SCM's attorney's fees and costs as provided in any applicable contract, rule or statute as well as any such other and further relief as this Court deems just and proper.

## COUNT II

### Breach of Contract

48.     This is an incorporation paragraph for which no response is required.

49.     Admitted.

50.     Denied as a conclusion of law for which no response is required.  By way of further answer, Plaintiff SCM and Defendant McBride entered into the Master Agreement to Assign Medical Receivables (the "Agreement") on May 6, 2021. By way of further answer, Plaintiff SCM purchased hundreds of accounts receivable worth a total billed value of $7,731,643.05 for the "Medical Accounts Receivable." Further, Plaintiff SCM purchased hundreds of other accounts receivable, which Plaintiff has determined the total value to be $52,958,806.53 (the "Other Accounts Receivable"), as defined in Paragraph 5 of the Agreement.

51.     Denied as a conclusion of law for which no response is required.  By way of further answer, Plaintiff SCM purchased hundreds of accounts receivable worth a total billed value of $7,731,643.05 for the "Medical Accounts Receivable." Further, Plaintiff SCM also purchased hundreds of other accounts receivable, which Plaintiff has determined the total value to be $52,958,806.53 (the "Other Accounts Receivable"), as defined in Paragraph 5 of the Agreement.

52.     Denied as a conclusion of law for which no response is required.  By way of further answer, Plaintiff SCM has not intentionally collected any sums pursuant to the Master Agreement that it was not entitled to collect.  By way of further answer, SCM recently conducted an audit of accounts.   From that audit, SCM discovered that it received some erroneous and "blended" payments for a very limited number of certain accounts that include amounts due to SCM and in other cases some "blended" amounts for certain accounts that included both payment for a SCM purchased account and also for Defendant McBride.  These customers appear to have paid amounts due with one check to SCM, rather than splitting the payments due to SCM and to McBride, respectively.  Accordingly, out of an abundance of caution, SCM has forwarded to McBride its share of the payments recently received, which amounts total $6,262.11.  By way of further answer, in July, 2021 and again in October, 2021, SCM forwarded additional checks totaling $36,883.74 to Defendant McBride from the erroneous and/or "blended" payments previously received by SCM.  By way of further answer, as evidenced by SCM's actions in forwarding all checks received which potentially could be due to McBride, SCM has always acted in good faith and pursuant to the terms of the Agreement.

53.     Denied as a conclusion of law for which no response is required.  By way of further answer, see Plaintiff's answer to paragraph 52 above.  By way of further answer, while Defendant McBride has suffered no injuries, Plaintiff SCM has been damaged by Defendant's improper actions.

54.     Denied as a conclusion of law for which no response is required.  By way of further answer, see Plaintiff's answer to paragraph 52 above.  By way of further answer, while Defendant McBride has suffered no injuries, Plaintiff SCM has been damaged by Defendant's improper actions.

WHEREFORE, the Plaintiff, SURGICAL CAPITAL MANAGEMENT SPV II, LLC, respectfully requests that this Honorable Court dismiss Defendant's Counterclaims in their entirety, and grant judgment in favor of the Plaintiff and against Defendant, MCBRIDE SURGICAL CENTER, LLC, in the amount of $11,963,361.00, plus, interest, costs, and attorney's fees as provided for in the Agreement, or in any other applicable contract, statute, or rule, together with any such other and further relief this Court deems just and proper.

## COUNT III

### Breach of Implied Covenant of Good Faith And Fair Dealing

55.     This is an incorporation paragraph for which no response is required.

56.     Denied as a conclusion of law for which no response is required.

57.     Denied as a conclusion of law for which no response is required.  By way of further answer, Plaintiff SCM has not committed any wrong against Defendant.  Rather, it is the Defendant McBride that has damaged SCM through Defendant's improper actions.

58.     Denied as a conclusion of law for which no response is required.  By way of further answer, Plaintiff SCM has not intentionally collected any sums pursuant to the Master Agreement that it was not entitled to collect.  By way of further answer, Plaintiff SCM has not intentionally collected any sums pursuant to the Master Agreement that it was not entitled to collect.  By way of further answer, SCM recently conducted an audit of accounts. From that audit, SCM discovered that it received some erroneous and "blended" payments for  a very limited number of certain accounts that include amounts due to SCM and in other cases some "blended" amounts for certain accounts that included both payment for a SCM purchased account and also for Defendant McBride.  These customers appear to have paid amounts due with one check to SCM, rather than splitting the payments due to SCM and to McBride, respectively.   Accordingly, out of an

abundance of caution, SCM has forwarded to McBride its share of the payments recently received, which amounts total $6,262.11.  By way of further answer, in July, 2021 and again in October, 2021, SCM forwarded additional checks totaling $36,883.74 to Defendant McBride from the erroneous and/or "blended" payments previously received by SCM.  By way of further answer, as evidenced by SCM's actions in forwarding all checks received which potentially could be due to McBride, SCM has always acted in good faith and pursuant to the terms of the Agreement.

59.    Denied as a conclusion of law for which no response is required.  By way of further answer, see Plaintiff's answer to paragraph 58 above.  By way of further answer, Plaintiff SCM purchased hundreds of accounts receivable worth a total billed value of $7,731,643.05 for the "Medical Accounts Receivable." Further, Plaintiff SCM also purchased hundreds of other accounts receivable, which Plaintiff has determined the total value to be $52,958,806.53 (the "Other Accounts Receivable"), as defined in Paragraph 5 of the Agreement.

60.    Denied as a conclusion of law for which no response is required.  By way of further answer, see Plaintiff's answer to paragraph 58 above.  By way of further answer, while Defendant McBride has suffered no injuries, it is the Plaintiff SCM that has been damaged by Defendant's improper actions.

WHEREFORE, the Plaintiff, SURGICAL CAPITAL MANAGEMENT SPV II, LLC, respectfully requests that this Honorable Court dismiss Defendant's Counterclaims in their entirety, and grant judgment in favor of the Plaintiff and against Defendant, MCBRIDE SURGICAL CENTER, LLC, in the amount of $11,963,361.00, plus, interest, costs, and attorney's fees as provided for in the Agreement, or in any other applicable contract, statute, or rule, together with any such other and further relief this Court deems just and proper.

## COUNT IV

### Conversion

61.     This is an incorporation paragraph for which no response is required.

62.     Denied as a conclusion of law for which no response is required.  By way of further answer, Plaintiff SCM has not intentionally collected any sums pursuant to the Master Agreement that it was not entitled to collect.  By way of further answer, SCM recently conducted an audit of accounts.  From that audit, SCM discovered that it received some erroneous and "blended" payments for a very limited number of certain accounts that include amounts due to SCM and in other cases some "blended" amounts for certain accounts that included both payment for a SCM purchased account and also for Defendant McBride.  These customers appear to have paid amounts due with one check to SCM, rather than splitting the payments due to SCM and to McBride, respectively.  Accordingly, out of an abundance of caution, SCM has forwarded to McBride its share of the payments recently received, which amounts total $6,262.11.  By way of further answer, in July, 2021 and again in October, 2021, SCM forwarded additional checks totaling $36,883.74 to Defendant McBride from the erroneous and/or "blended" payments previously received by SCM.  By way of further answer, as evidenced by SCM's actions in forwarding all checks received which potentially could be due to McBride, SCM has always acted in good faith and pursuant to the terms of the Agreement.

63.     Denied as a conclusion of law for which no response is required.  By way of further answer, see Plaintiff's answer to paragraph 62 above.  By way of further answer, under New Jersey's economic loss doctrine, the rights and remedies of parties to a contract are governed solely by that contract, and neither party can bring tort claims against the other for economic loss unless there is some specific, independent duty separate and apart from the contract. *Saltiel v. GSI*

*Consultants*, 170 N.J. 297, 316, 788 A.2d 268 (2002) ("Under New Jersey law, a tort remedy does not arise from a contractual relationship unless the breaching party owes an independent duty imposed by law.").  In this matter, the rights of the parties are clearly and expressly delineated by the Agreement.  Therefore, the Defendant's claim for conversion is not proper and should be dismissed.

64.     Denied as a conclusion of law for which no response is required.  By way of further answer, see Plaintiff's answer to paragraph 63 above.  By way of further answer, while Defendant McBride has suffered no injuries, Plaintiff SCM has been damaged by Defendant's improper actions.

WHEREFORE, the Plaintiff, SURGICAL CAPITAL MANAGEMENT SPV II, LLC, respectfully requests that this Honorable Court dismiss Defendant's Counterclaims in their entirety, and grant judgment in favor of the Plaintiff and against Defendant, MCBRIDE SURGICAL CENTER, LLC, in the amount of $11,963,361.00, plus, interest, costs, and attorney's fees as provided for in the Agreement, or in any other applicable contract, statute, or rule, together with any such other and further relief this Court deems just and proper.

## COUNT V

## Constructive Trust

65.     This is an incorporation paragraph for which no response is required.

66.     Denied as a conclusion of law for which no response is required.  By way of further answer, Plaintiff SCM has not intentionally collected any sums pursuant to the Master Agreement that it was not entitled to collect.  By way of further answer, SCM recently conducted an audit of accounts. From that audit, SCM discovered that it received some erroneous and "blended" payments for a very limited number of certain accounts that include amounts due to SCM and in

other cases some "blended" amounts for certain accounts that included both payment for a SCM purchased account and also for Defendant McBride. These customers appear to have paid amounts due with one check to SCM, rather than splitting the payments due to SCM and to McBride, respectively. Accordingly, out of an abundance of caution, SCM has forwarded to McBride its share of the payments recently received, which amounts total $6,262.11. By way of further answer, in July, 2021 and again in October, 2021, SCM forwarded additional checks totaling $36,883.74 to Defendant McBride from the erroneous and/or "blended" payments previously received by SCM. By way of further answer, as evidenced by SCM's actions in forwarding all checks received which potentially could be due to McBride, SCM has always acted in good faith and pursuant to the terms of the Agreement. By way of further answer, Plaintiff has not been unjustly enriched in any way in this matter; rather, Plaintiff has been damaged by the Defendant's improper actions and conduct.

67.    Denied as a conclusion of law for which no response is required. By way of further answer, in New Jersey, a constructive trust is an equitable remedy and not a cause of action in and of itself. *See Flanigan v. Munson*, 175 N.J. 597, 818 A.2d 1275, 1281 (2003); *Bergen—Eastern Pension Trust v. Sorensen*, No. BER—L—7669—03, 2007 WL 283440, at *2 n. 3 (N .J.Super. Ct.App. Div. Jan II, 2007). Accordingly, Defendant's Count V should be dismissed in its entirety. By way of further answer, a constructive trust is not necessary as the only party that has been damaged is the Plaintiff. Therefore, there is no need for the Court to impose a constructive trust.

WHEREFORE, the Plaintiff, SURGICAL CAPITAL MANAGEMENT SPV II, LLC, respectfully requests that this Honorable Court dismiss Defendant's Counterclaims in their entirety, and grant judgment in favor of the Plaintiff and against Defendant, MCBRIDE SURGICAL CENTER, LLC, in the amount of $11,963,361.00, plus, interest, costs, and attorney's fees as provided for in the Agreement, or in any other applicable contract, statute, or rule, together with any such other and further relief this Court deems just and proper.

**BERGER LAW GROUP, P.C.**

Dated: _5/18/2022_        _Phillip D. Berger_
PHILLIP D. BERGER, ESQUIRE
919 Conestoga Road, Building 3, Suite 114
Rosemont, PA 19010
Telephone:     (610) 668-0774
Fax:             (610) 668-2800
berger@bergerlawp.com
N.J. Attorney Id. No. 019551990
*Local Counsel for the Plaintiff*

-and-

**CRAIG E. ROTHBURD, P.A.**

_/s/ **Craig E. Rothburd**_
CRAIG E. ROTHBURD, ESQ.-FBN: 0049182
320 W. Kennedy Blvd., #700
Tampa, Florida 33606
Telephone:     (813) 251-8800
Fax:             (813) 251-5042
craig@rothburdpa.com
*Attorneys for Plaintiff*